IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02530-PAB

TIMOTHY GENE FOLTZ,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

# ORDER

This matter is before the Court on plaintiff Timothy Gene Foltz's complaint [Docket No. 1] filed on September 16, 2013. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On February 12, 2008, plaintiff applied for disability insurance benefits under Title II of the Act. R. at 16. Plaintiff alleged that he had been disabled since December 15, 2006. *Id.* Plaintiff was born on February 12, 1949, *id.* at 26, and was therefore considered of "advanced age" as of the alleged disability onset date, and "closely approaching retirement age (age 60 or older) as of February 12, 2009. 20 C.F.R. § 404.1563(e). Before he stopped working, plaintiff worked as an automobile mechanic

and motorcycle repairer. *Id.* at 28.

After an initial administrative denial of his claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on April 29, 2010. *Id.* at 99. On June 6, 2010, the ALJ denied plaintiff's claim. *Id.* at 109. Plaintiff appealed the ALJ's decision. While his appeal was pending, plaintiff filed a new claim for disability insurance benefits that was favorably decided, establishing a disability onset date of June 7, 2010. *Id.* at 115. The Appeals Council remanded the case to the ALJ for further proceedings and asked the ALJ to consider new material evidence that was raised in plaintiff's second application for benefits in determining plaintiff's Residual Functional Capacity ("RFC"), and to obtain supplemental evidence from a vocational expert ("VE") to clarify the effect of all of plaintiff's limitations on his ability to work. *Id.* at 116. On remand, after a second hearing held on November 30, 2011, *id.* at 16, the ALJ issued a decision partially denying plaintiff's claim. *Id.* at 30. The ALJ found that plaintiff was not disabled before April 1, 2010, but that plaintiff became disabled as of that date. *Id.* at 29-30.

The ALJ found that, from December 15, 2006 to April 21, 2008, plaintiff had the RFC to "perform medium work as defined in 20 C.F.R. § 404.1567(c) except that there should have been no climbing of ladders, ropes or scaffolds and avoidance of concentrated exposure to unprotected heights and unprotected manufacturing machinery." R. at 21. The ALJ also found that, from April 22, 2008 through March 31, 2010, plaintiff had the RFC to

> perform light exertional work as defined in 20 C.F.R. § 404.1567(b) except that there should have been occasional lifting, carrying, pushing or pulling of

>25 pounds and frequent lifting, carrying, pushing or pulling of 20 pounds; [plaintiff] should have used the upper extremities to push or pull for no more than two hours at a time, for no more than six hours during an eight-hour workday; there should have been no climbing of ladders, ropes or scaffolds and occasional climbing of stairs and ramps, stooping, kneeling, crouching and crawling; [plaintiff] should have gripped, handled, fingered or felt for no more than two hours at a time, for no more than six hours during an eight-hour workday; and avoidance of concentrated exposure to unprotected heights and unprotected manufacturing machinery.

R. at 21. Based upon this RFC and the testimony of a VE, the ALJ concluded that, between April 22, 2008 and March 31, 2010, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. *Id.* at 27.

The Appeals Council denied plaintiff's request for review of the ALJ's partial denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred at step five of the sequential evaluation process in finding that plaintiff had transferable skills that would allow him to perform the job of "salesperson, parts," Dictionary of Occupational Titles ("DOT") 279.357-062.[1]

---

[1] The ALJ's determination is relevant only to the period between April 22, 2008 and March 31, 2010, when the ALJ found that plaintiff was unable to perform past

Under the Medical-Vocational Guidelines, often referred to as "grids," a claimant who is limited to light work, is of advanced age, and has limited or less education is considered not disabled if he has transferable skills from previous skilled or semiskilled work, 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.03, but is considered disabled if his previous skilled or semiskilled work did not provide transferable skills. *Id.* § 202.02. There is no dispute that plaintiff, as of April 22, 2008, was of advanced age, had limited or less education, was limited to light work, and had previous experience in skilled or semiskilled work. Thus, the issue of whether plaintiff had transferable skills that would allow him to perform work that exists in significant numbers in the national economy is potentially determinative of whether or not plaintiff was disabled between April 22, 2008 and March 31, 2010.[2]

Under the Social Security regulations, a "skill" is "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." SSR 82-41, 1982 WL 31389,

---

relevant work, but was nonetheless not disabled. R. at 27.

[2]The ALJ wrote that "Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills." R. at 27. The Court suspects that the ALJ was referring to the period before April 22, 2008, when the ALJ found that plaintiff had the RFC to perform work in the medium exertional category. *See* R. at 21; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 203.12, 203.13 (claimants capable of performing medium work who are of advanced age and have limited or less education are not disabled whether or not they have transferable skills). The ALJ noted that plaintiff "gained the job skill of knowledge of automobile parts from his previous employment" to support his finding that plaintiff was capable of performing work that exists in significant numbers in the national economy. R. at 28.

at *2 (1982). "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." *Id.* "Transferability is most probable and meaningful among jobs in which – (i) the same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved." 20 C.F.R. § 404.1568(d)(2).

For a claimant who is "closely approaching retirement age (age 60 or older)" and "ha[s] a severe impairment(s) that limits [him] to no more than light work," the regulations provide that a finding of transferable skills is only appropriate "if the light work is so similar to [his] previous work that [he] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).

Plaintiff first argues that the VE testimony that the "salesperson, parts" job was an automotive industry position is inconsistent with the DOT, which describes the position as selling "appliance, electrical, and other parts" in addition to automotive parts. Docket No. 15 at 36-37 (citing DOT 279.357-062). The Commissioner responds that it is not error for an ALJ to rely on VE testimony that is more specific than the information contained in the DOT. Docket No. 18 at 24-25 (citing *Seay v. Astrue*, 2011 WL 780693 at *12 (M.D. Tenn. Feb. 28, 2011), *report and recommendation adopted*, 2011 WL 977499 (M.D. Tenn. Mar. 18, 2011). The Commissioner is right that the DOT provides "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings" and that "a VE . . . or other reliable source of occupational information may be able to provide more

specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704 at *3 (Dec. 4, 2000). Nonetheless, the Court finds that the discrepancy between the VE's testimony and the DOT creates an ambiguity about the number of jobs that exist in the national economy that plaintiff could perform.

The VE testified that there are 1,985 "salesperson, parts" positions in Colorado and 140,893 such positions nationally. R. at 61. Later, when asked about transferable skills, the VE testified that plaintiff's "[k]nowledge of parts" transferred to the "salesperson, parts" position and that the position is limited to automobile and motorcycle parts. *Id.* at 62. The VE also testified that "salesperson, parts" is the only position for which plaintiff had transferable skills. *Id.* The "salesperson, parts" position as defined by the DOT, however, is not limited to only the automobile industry. *See* DOT 279.357-062 (noting that the position "[s]ells automotive, appliance, electrical and other parts and equipment"). On this record, it is not clear that the VE's testimony about the number of "salesperson, parts" jobs referred to the position as a whole (which includes appliance, electrical, and other parts), or whether it applied only to a subsection of the occupation, namely, automobile and motorcycle parts sales. Because the Court cannot determine if the numbers provided by the VE refer to the subset of "salesperson, parts" jobs for which plaintiff has a transferable skill, the ALJ's reliance on the VE's testimony is not sufficient to meet the Commissioner's burden at step five to prove that the position exists in significant numbers in the national economy. *See Ragland v. Shalala*, 992 F.2d 1056, 1057 (10th Cir. 1993).

Second, plaintiff argues that the ALJ erred in finding that plaintiff's skills transfer to the "salesperson, parts" position because plaintiff does not have any experience in

8

sales, cashier work, or computers, each of which is required by the position. Docket No. 15 at 37. The Court finds that the ALJ's determination that plaintiff's past work gave him knowledge of automobile parts is sufficient to find that plaintiff's skills were transferable to automobile or motorcycle parts sales during the period when plaintiff was of "advanced age" but not yet "closely approaching retirement age."[3] Plaintiff's past relevant work involves the same "tools and machines" and the same "products" as automobile or motorcycle parts sales. 20 C.F.R. §§ 404.1568(d)(2)(ii), (iii). Although certain aspects of the jobs may differ, "[a] complete similarity of all three [section 404.1568(d)] factors is not necessary for transferability." *Id.* § 404.1568(d)(3).

The Court finds, however, that the ALJ's finding that plaintiff had transferable skills as of February 12, 2009 is not supported by substantial evidence. After plaintiff turned 60, he was considered "closely approaching retirement age," at which point a finding of transferable skills for a claimant limited to light work requires the Commissioner to find that the new position "is so similar to [plaintiff's] previous work that [plaintiff] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).[4] The VE did not testify as to the degree of vocational adjustment required to move from repairing automobiles and motorcycles to selling parts. The VE's testimony, therefore,

---

[3] *See* 20 C.F.R. § 404.1568(d)(4) ("If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work").

[4] This is the same standard that is applied to individuals of advanced age who are limited to sedentary work. *See* 20 C.F.R. § 404.1568(d)(4).

is not substantial evidence that plaintiff possessed skills transferable to the "salesperson, parts" position as of his 60th birthday.  *See Dikeman v. Halter*, 245 F.3d 1182, 1188 (10th Cir. 2001) (for a claimant of advanced age limited to sedentary work, to find transferable skills, "the ALJ . . . must make findings as to the vocational adjustment required for plaintiff to perform other, semi-skilled jobs within her RFC"); *Castellucci v. Colvin*, 2014 WL 4371424 at *23 (N.D. Cal. Sept. 3, 2014) (holding that an ALJ committed error in failing "to inquire about vocational adjustments")*.*  On remand, the ALJ is instructed to make findings concerning the vocational adjustments necessary to transition from plaintiff's past relevant work to the "salesperson, parts" position.

Plaintiff also argues that the ALJ erred in not stating how long plaintiff could stand at one time and during an eight-hour workday.  Docket No. 15 at 40.  The Court addresses this argument as it may be relevant on remand.  SSR 96-8p requires that an RFC assessment identify a claimant's functional limitations "on a function-by-function basis, including [functions such as sitting, standing, and walking]."  SSR 96-8p, 1996 WL 374184 at *1 (July 2, 1996).  The ALJ's decision did not include a finding as to plaintiff's ability to sit and stand.  While the Court need not decide whether this omission would be independent grounds for remand, the ALJ is instructed on remand to perform the required function-by-function analysis in determining plaintiff's RFC.

In light of the aforementioned errors, the ALJ's decision will be reversed and remanded.  The ALJ's reconsideration of plaintiff's transferable skills and the number of jobs that exist in automobile and motorcycle parts sales in the national economy will provide the ALJ with the opportunity to reassess the totality of evidence supporting

plaintiff's RFC.  Therefore, the Court will not address plaintiff's remaining arguments.[5]

*See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("we will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED March 30, 2015.

                                        BY THE COURT:


                                         s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge

---

[5] Plaintiff also argues that the ALJ did not consider all of plaintiff's impairments in the RFC determination, *see* Docket No. 15 at 38, failed to consider plaintiff's subjective complaints and failed to properly assess his credibility, *see id.* at 41-43, and failed to evaluate the opinions of examining physicians and other sources.  *See id.* at 43-45.